In the Matter of Mildred Gilshion, as Administratrix of the Estate of Helen L. Hunt, Deceased, Petitioner, against Patrick J. Walsh, as Fire Commissioner of the City of New York, and as Chairman of the Board of Trustees of the New York Fire Department Pension Fund of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, March 14, 1944.

*Bennett & Edenbaum* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel* (*Morris Shapiro* of counsel), for respondents.

HECHT, J. This is an application by the administratrix of the widow of a deceased fireman (1) to vacate a determination of the Board of Trustees of the New York Fire Department Pension Fund denying petitioner's demand for payment of sums claimed to be due to petitioner's intestate as a widow's pension for a period of twenty-six years, from August 1, 1917, to August 2, 1943, the date of her death, and (2) to direct the trustees to make payment of said sums to petitioner.

On or about December 1, 1895, Peter W. Hunt was appointed a member of the uniformed force of the New York City Fire Department. He served as such continuously for twenty years until December 1, 1915, on which day he retired from the force. He died January 13, 1916, leaving a widow and seven children. An additional child was born posthumously on August 15,

1916. On or about January 29, 1916, the widow was notified that she had been placed on the pension rolls of the Fire Department at the rate of $300 per annum payable monthly, as the widow of Peter W. Hunt, retired. On or about August 21, 1917, the widow was committed as an insane person to Kings Park State Hospital where she remained up to the date of her death, August 2, 1943, without regaining her sanity. She never remarried. Petitioner claims no pension payments were made after the month of July, 1917. Respondents deny that the payments ceased prior to July 1, 1918, at which time the pension of the widow was revoked. On March 30, 1943, petitioner, one of the eight children, wrote a letter to the Chairman of the Board of Trustees of the Fire Department Pension Fund, in which she stated that her mother had received no pension check since August, 1917, and asked for information as to what could be done to rectify the situation. No action was taken by the Board of Trustees. After her mother's death on August 2, 1943, limited letters of administration were issued to petitioner and she engaged an attorney who wrote to the Chairman of the Board of Trustees demanding payment of accrued pensions for the period from August 1, 1917, to August 2, 1943. At the semimonthly meeting of the Board on November 22, 1943, this request for payment was considered but a motion to approve the payment failed to obtain the number of votes required by section B19–2.0 of the Administrative Code of the City of New York (L. 1937, ch. 929) for the adoption of a resolution by the Board of Trustees. It is this determination of the Board of Trustees which petitioner now seeks to vacate.

At the time of Peter W. Hunt's death in 1916, section 791 of the Greater New York Charter (L. 1901, ch. 466, as amd. by L. 1908, ch. 354) made the following provision for pension payments to the widow of a fireman or retired fireman whose death was not the result of the performance of his duties: " The trustee of the relief fund *is authorized and empowered,* from time to time, to pay a pension out of said relief fund to the widow * * * *provided* * * * *that such pension may be ordered to cease and terminate at any time if, in the opinion of the trustee,* the circumstances should warrant the same; and further provided, that not more than three hundred dollars shall be paid in any one year * * * and that no part of such sum shall be paid to any such widow who shall marry again, after her remarriage ". (Italics supplied.)

By amendment effective January 6, 1931 (Local Laws, 1930, No. 24 of City of New York), the amount of the pension, *if*

*granted,* was changed from a *maximum* of $300 per year to the *absolute* sum of $600 per year. Section 791 in its amended form, on January 1, 1938, became subdivision a of section B19–6.0 of the Administrative Code of the City of New York (Local Laws, 1940, No. 3 of City of New York).

By Local Law No. 3 of 1940, subdivision a of section B19.6–0 was amended to read: " The board of trustees of the pension fund *shall* pay a pension out of such fund to the widow * * * of any deceased member of the uniformed force of such department * * *. The annual allowance * * * shall be six hundred dollars, and no part of such sum shall be paid to any such widow who shall remarry, after such remarriage ". (Italics supplied.) The provision which had existed up to that time authorizing the termination of the pension at any time if, in the opinion of the trustee, the circumstances should warrant it, was omitted from the section as amended in 1940. The 1940 amendment is, however, inapplicable to the instant case for section B19.1–0, which forms part of the 1940 amendment, provides that " As used in this article the following terms shall mean and include: 1. ' Member.' A person who was an officer, member or probationary member of the uniformed force of the department at the time when this section shall take effect." (See *Dolan* v. *Valentine,* N. Y. L. J. Aug. 2, 1941, p. 257, col. 4.) Since Peter W. Hunt had ceased to be a member of the Department twenty-five years before the 1940 amendment took effect, the rights of his widow to a pension are wholly unaffected by the present provisions of subdivision a of section B19–6.0 of the Administrative Code.

At the time of Hunt's death the pension fund was derived from various sources without any contributions by the members of the Fire Department (Greater New York Charter, § 789). The widow of a fireman whose death was not due to the performance of his duties had no absolute right under section 791 to any pension. The trustee of the pension fund was merely " *authorized and empowered* " to pay her a pension not exceeding $300 per annum, with the express reservation that " if, *in the opinion of the trustee,* the circumstances should warrant the same ", he might order the pension to cease and terminate at any time. (Italics supplied.) The granting or withholding of a pension rested in the trustee's absolute and uncontrolled discretion, not reviewable by the courts whether " wisely or unwisely, justly or unjustly exercised." (*People ex rel. Bliel* v. *Martin, et al.,* 131 N. Y. 196, 199.) In the *Bliel* case the relator had applied for a writ of mandamus to compel

payment of a pension of $300 per year to her as the widow of a deceased policeman who had served for thirteen years prior to his death. Section 4 of chapter 389 of the Laws of 1878 provided that the Board of Trustees of the police pension fund shall "have power to grant pensions" to the widow of any member of the police force who shall have died after ten years of continuous service. Chief Justice EARL, writing for the court, pointed out that (p. 198): "This section did not command the board in any of the cases specified in section 4 to grant pensions, but simply provided that they should have *power* to grant them; and that language clearly vested them with the discretion in any particular case to grant or withhold a pension." As *additional* ground for this interpretation Judge EARL, in calling attention to the provision authorizing the board to terminate the pension in its discretion, said (p. 198): "It cannot be supposed that the legislature meant to confer upon the board a discretion to withhold pensions after they had once been granted, and yet make it obligatory upon them in the first instance to grant them." After holding that the police board was vested with discretion to grant or withhold a pension, the court added (p. 199): "That discretion is not reviewable by any judicial tribunal. It may be wisely or unwisely, justly or unjustly exercised. It is vested in the board and they must exercise it, and there is no authority elsewhere to review their determination. In the numerous cases cited in the elaborate brief submitted on behalf of the relator the courts reviewed the discretion of officers, magistrates and inferior courts in the exercise of their appellate or supervisory jurisdiction conferred upon them by statutes. Here the Supreme Court possessed no appellate or supervisory jurisdiction to review the determination of the board of police."

In *Matter of Sheridan* v. *McElligott* (278 N. Y. 59) the Court of Appeals held that the provision in section 791 of the Greater New York Charter as it existed at the time of the death of petitioner's husband in February, 1936, that in the case of the death of a member of the uniformed force resulting from actual performance of his duties, the trustee of the relief fund "shall have the power" to award the widow an amount not to exceed one half her husband's compensation at the date of his decease, conferred a purely discretionary power upon the Fire Commissioner and that the exercise of his discretion could not be reviewed by the courts. The court said (p. 62): "The most that can be said is that the Fire Commissioner *has the power* to award a pension in an amount not to exceed one-half of his

salary. This discretion is vested in the Fire Commissioner and is not reviewable by the courts. (*People ex rel. Bliel* v. *Martin,* 131 N. Y. 196.) '' Reference is made in the opinion to the provision that the annual allowance to the representative of a member of the uniformed force who shall die during his term of office '' *shall* be six hundred dollars.'' (The change to an absolute allowance of $600, as previously pointed out, became effective January 6, 1931.) (Italics supplied.) A reading of section 791 of the Charter, as it was worded at the time of the· death of the husband of Mrs. Sheridan, reveals that it did not pro vide that the trustee of the pension fund *shall award* the widow of a deceased fireman a pension of $600 but only that *if he exercised his power to grant a pension to the widow,* that pension '' shall be six hundred dollars.''

In *Matter of Friel* (101 App. Div. 155, 158–159, affd. 181 N. Y. 558) the court said: '' The Legislature * *· * has given the police commissioner the power to retire the relator after serving twenty years, if he is at that time fifty-five years of age. This is, however, a discretionary power, and one which cannot be compelled by mandamus. * * * and as this court is without power to control the discretion which the law has placed in the police commissioner, it follows that the relator cannot gain upon this appeal the relief which he seeks.''

: *Matter of Tobin* (64 App. Div. 375), relied upon by petitioner, has no application to the instant case. The statute there involved provided that '' in every case the commissioner shall determine the circumstances '' involved in the pension application, a provision wholly absent from section 791 of the Greater New York Charter. All that was held was that this provision required the respondent to determine the circumstances of the petitioner's case. The court expressly stated (pp. 377–378): '' We are not now called upon to determine whether the word ' may ' is used generally in the foregoing extract in the sense of ' must ' or when and in what cases, if any, it may be so construed. On the face of the statute it is made the duty of the commissioner to inquire into and to determine the circumstances of each case * * *· * * * Nor are we now called upon to decide whether, or how far, the action of the respondent may be reviewed by the courts ''. It was only because the answer to the petition failed to show that the Commissioner had determined the circumstances of the petitioner's case that the order denying her application for an order of mandamus was reversed and an alternative writ issued. There is nothing in the ·opinion to lend support to the view that the trustee of the pension

fund in a case under section 791 of the Charter, which contained no provision that he was to determine the circumstances of the application, was obliged to justify his refusal to exercise his discretion in favor of granting the application for a widow's pension. In the *Tobin case* (*supra*) even though the statute did contain such a provision, the court refrained from deciding whether a denial of the application would be subject to judicial review.

It seems to be clear from the reasoning of the cases above referred to that the power of the trustee of the pension fund to revoke and terminate pensions was equally discretionary and immune to judicial review. The trustee could revoke or terminate a pension if " in the opinion of the *trustee* ", circumstances warranted such action (italics supplied). It was the trustee's opinion which was to control. What the trustee could, in his discretion, grant, he was expressly empowered, in his discretion, to revoke. The case of *Roddy* v. *Valentine* (268 N. Y. 228) is relied upon by petitioner for the proposition that once a pension had been granted, petitioner acquired a vested interest, in the nature of a contract, which might not thereafter be taken away from her, at least without reasonable basis. The case cited is, however, clearly distinguishable in that it involved section 355 of the Greater New York Charter relating to police pensions, which provided that " pensions granted under this section shall be for the natural life of the pensioner, *and shall not be revoked, repealed or diminished.*" (Italics supplied.) In the instant case there is express statutory provision to the contrary, authorizing the revocation or termination of the pension whenever, in the opinion of the trustee of the pension fund, the circumstances warrant the same. The very language of the opinion in *Roddy* v. *Valentine* (*supra*) indicates the importance of this distinction (p. 232): " Where, however, * * * the award of the pension or benefit has been made * * * the interest becomes vested and takes on the attributes of a contract, which *in the absence of statutory reservations*, may not legally be diminished or otherwise adversely affected by subsequent legislation." (Italics supplied.) The case at bar comes within the exception referred to in the opinion, since there is express statutory language which in effect provides that the granting of a pension shall not deprive the trustee of the fund of the right to revoke it.

The case of *Matter of Curtin* v. *Dorman* (N. Y. L. J., Jan. 18, 1944, p. 221, col. 3) also has no application here since

there the petitioner had been receiving a pension of $700 per annum as the widow of a fireman who had died *in the performance of his duties*. There was no provision in section 791 of the Charter authorizing the revocation of a pension granted in such a case. It was only as to pensions granted to representatives of firemen who had not died in the performance of their duties or as the result thereof that the trustee of the pension fund was expressly authorized to revoke pensions theretofore granted.

Nor is there any merit in petitioner's contention that a reading of section 791 of the Charter in its entirety reveals that the power to revoke a widow's pension was limited to cases of misconduct on her part. The provision in that section for revocation of pension payments to a widow for her misconduct relates only to those provisions of section 791 which deal with pensions to the widow of a fireman killed in or as the result of the performance of his duties, which pensions may equal one half of the deceased's salary at the time of his death. This is clear from the fact that the reference to termination of a widow's pension for misconduct is part of a sentence which also authorizes termination of the pension upon her death or remarriage. Since the section already contained a provision for the termination of a widow's pension upon her remarriage *where the deceased husband did not die in or as the result of the performance of his duties,* it was unnecessary to repeat the same provision later in the section. It seems obvious from this and also from the context that the authorization to terminate a widow's pension for improper conduct was intended to apply only to the immediately preceding provisions relating to pensions to widows of members dying in connection with the performance of their duties.

The discretionary power to grant and revoke pensions to persons in the position of plaintiff's intestate still exists. As clearly pointed out, the 1940 amendment, which substituted the word "shall" for the words "authorized and empowered" and which eliminated the previously existing authorization to revoke pensions theretofore granted, is by the express terms of the 1940 statute not applicable to representatives of firemen who were not members of the force in 1940, when the amendment took effect.

It follows that in 1943, at the time the Board of Trustees of the pension fund received petitioner's letter and at the time they received her subsequent demand as administratrix of the widow, the Board still possessed a discretion to deny relief which

is not subject to judicial review. Neither the revocation of the pension in 1918, nor the refusal to comply with petitioner's demand in 1943, may be reviewed by this court, irrespective of whether there was reasonable basis therefor.

Petitioner's contention that the Board of Trustees did not deny her demand — because the vote upon the resolution to grant her relief was six to six, whereas a vote of seven twelfths was necessary to carry the resolution — is without merit, for unless the resolution was affirmatively carried the Board, by its own inaction, in effect, was refusing to comply with petitioner's demand.

Even if it were assumed that the revocation of the pension in 1918 and the failure to grant relief in 1943 may be set aside on proper and timely application, if arbitrary, whimsical or capricious, petitioner's position is not improved. In *People ex rel. Bliel* v. *Martin, et al.* (131 N. Y. 196, 199, *supra*), the Court of Appeals said: " It does not even appear here that the board abused their discretion, as the ground upon which they exercised it, and the reasons for their refusal to grant the pension do not appear in this record. They may have found sufficient reason for their refusal in the fact that the relator had not lived with her husband for more than three years before his death, and during that time had lived in a distant state, supporting herself ' by keeping a gentlemen's lodging and boarding house '." Examination of the record on appeal in that case reveals that no reason whatsover was given for the denial of the application for a pension. The only reference to the reasons which may have motivated the denial was contained in the petitioner's affidavit and consisted of a statement that the Police Commissioner had told her that the pension would be denied because she was a nonresident. The only mention in the record on appeal to the maintenance of a boarding and lodging house by petitioner outside the State is to be found in her own affidavit and there is nothing in the record to show that said fact was known to the officers of the pension fund or formed the basis of their action. So, in the case at bar, although the records of the pension fund showing the reasons for the revocation of the pension have been lost in the quarter of a century which has elapsed since the revocation, the court may sustain the revocation on the theory that the pension may have been revoked because the widow was confined to a State institution for the insane and, as such, was a public charge, requiring no pension for her support. No question is here involved as to the right of the children to receive a pension at the time the

widow's pension was revoked in 1918, but even if it were, the fact that all the children (except one serving in the Navy) were also public charges at the time would constitute ample justification for denying them a pension.

There is also ample basis for holding that the failure of the Board of Trustees to grant relief to petitioner in 1943 was not unreasonable, arbitrary, whimsical or capricious. There had been no change of circumstances as to the widow since 1918, for she still remained a public charge. The children had all become more than eighteen years of age and, therefore, under the provisions of section 791 had no right to receive pensions.

In view of the conclusions reached by the court it is unnecessary to consider whether, notwithstanding the revocation of the pension in 1918, an application could thereafter be made by the widow for payment to her of a pension either *in futuro,* or both *in futuro* and also for a period antedating the application, and it is likewise unnecessary to discuss the question of laches and statute of limitations raised by respondent.

It follows from the foregoing that insofar as relief is sought for the period subsequent to July 1, 1918, the application must be denied. Even if no pension payments were made to the widow for the period from August 1, 1917, to July 1, 1918, i. e., prior to the revocation, no recovery may now be had for the amounts involved since the Statute of Limitations constitutes an insuperable bar. More than twenty-five years have elapsed since the pension payments for the period above referred to became due. Under subdivisions 2 and 3 of section 60 of the Civil Practice Act, not more than five years may be added in case of insanity to the time limited in the Civil Practice Act for the commencement of an action.

The motion is denied in all respects.